438 P.2d 811

**DOUBLE D AMUSEMENT COMPANY, a corporation, Plaintiff and Respondent,**

**v.**

**William B. HAWKINS, Defendant and Appellant.**

**No. 10938.**

Supreme Court of Utah.

March 22, 1968.

---

Dallas H. Young, Jr., Provo, for appellant.

Jackson B. Howard, of Howard & Lewis, Provo, for respondent.

HENRIOD, Justice:

Appeal from a damage judgment incident to the rental of a music box to Hawkins, tavern owner. Affirmed, with no costs awarded.

This case involves a five-year written contract, contemplating an equal share in any revenue produced by the machine. Eight months later Hawkins arbitrarily removed the machine.

In a previous trial the court concluded that Hawkins breached the contract and found that the monthly take of the contracting parties was $67.50 each.

This is a sequel suit which has to do with damages only, and it was stipulated that the conclusions reached in the first case would be included in this, the second.

The quantum and quality of this litigation, poignantly was expressed by the trial court at the end thereof when he remarked that "This isn't one of those nice, clear cases that we often have, is it?" and that "This is a complicated case," and that "I would hate to have to present it to a jury." That was an understatement, but this court heartily agrees.

Both sides agree that speculative damages cannot be awarded and that damages must be mitigated, if possible. Hawkins says the attempted proof of damages here was speculative, but nevertheless must be mitigated, which seems to be some sort of inverted non sequitur.

Nonetheless, we can start out in this case with a cornerstone upon which to justify the trial court's conclusion. The $67.50 per month figure over an eight-month period was based on tickets which logged the average monthly revenue for that period.

These were admitted in evidence without objection, which evidence was merged in this second suit. The trial court used this figure as a formula in projecting damages over the entire life of the contract. Applying the formula, the court, in assessing

the damages, deducted the expenses incurred by DD as reflected in proof thereof adduced at the trial, to calculate DD's net, and therefore loss of profit.

Hawkins counters by saying that DD should mitigate the damages by re-renting the machine to someone else and deducting his profits therefrom from Hawkins' obligation under the contract, which the latter wilfully breached. Carried to its logical conclusion, this would mean that DD would have to wait for the remainder of the five-year term before he could file suit and account to his defaulter for what damages he was entitled to after mitigation. This makes not much sense. There might be a duty to mitigate till time of suit, but to say one must mitigate for four years in the future is more speculative than the damages DD sought to be proved.

Hawkins strongly urges that this machine made no profit for DD since the latter had 83 machines of different types, and the company made no profit on them. Using this approach the claim that DD should mitigate damages is somewhat vacuous. But this case involves only *one* of the machines and it was proved that this one machine *did* make a profit for eight months, —which individual machine is the only issue here. From Hawkins' argument, a person who signed a contract like the one here, could use the machine for one day, breach the contract by throwing it out, then contend that DD had no cause of action under

the instrument because the latter could not recover for speculative damages that he had to prove thereunder.

The whole purpose of contracts such as this is to place the machine in a prime location which will produce maximum revenue, and any duty to mitigate would be to search out and spend time, energy and expense to do a possibly useless thing.

We think the trial court used the most sensible and fair approach here in measuring damages and we so hold.

TUCKETT, J., concurs.

ELLETT, Justice (concurring in the result).

I concur in the result. The appellant is the proprietor of a tavern and lounge, and the respondent owns many automatic music boxes. The parties executed a written contract with the following provisions:

> Proprietor hereby grants unto Company the exclusive right for 5 years to install and maintain automatic music equipment upon the premises located L-Roy Tavern Lounge.

> Company shall install upon said premises the following music equipment: New L. P. Console along with speakers and other music equipment to be placed at company's option.

\* \* \* \* \* \*

In the event of any breach of this agreement, in addition to any other rem-

edy which it may have in law or in equity, Company may elect to terminate this agreement and remove all such equipment without interference from Proprietor and shall be entitled to liquidated damages of a sum equal to the Company's average weekly contents of the coin boxes prior to said breach multiplied by the number of weeks remaining in the unexpired term of this agreement.

This is not a case where the proprietor agreed to rent a specified machine, but it is a case where the proprietor gave an exclusive right to the company to install and maintain automatic music equipment in the lounge for a term of years. The respondent had many pieces of automatic music equipment. What it sought was favorable locations for installing that equipment.

By refusing to allow the company to maintain the equipment, the appellant became liable for damages because of his breach of the contract. The measure of those damages would be that which the parties had in contemplation of mind when the agreement was executed. The agreement itself states that liquidated damages would be the average weekly contents of the coin boxes prior to the breach multiplied by the number of weeks remaining in the term. These so-called liquidated damages would constitute a penalty and would not be enforceable because they do not provide for the costs of the operation of the machine. However, it does show what the parties had in mind as to how damages would be ascertained.

The trial court used the correct measure of damages when it took the respondent's share of the average monthly take and multiplied it by the number of months remaining in the term and then subtracted therefrom the costs of operation.

The appellant tries to complicate the issue by claiming the company was under a duty to mitigate damages by placing its machine in another location. This the company was not required to do. If a new location could have been secured, another machine could have been installed therein without in any manner diminishing the profits from the machine in the appellant's lounge.

CROCKETT, C. J., concurs in the concurring opinion of ELLETT, J.

CALLISTER, J., concurs in the main opinion and also in the concurring opinion of ELLETT, J.